IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TAMLA RENCHER and TERRY                    Civ. No. 03-166-AA
VANCE, JR.,                                   OPINION AND ORDER

            Plaintiffs,

      v.

JOHN CHILDS and NW FREEDOM
CORP., a corporation,

            Defendants.
─────────────────────────────────────

James L. Buchal
Murphy & Buchal LLP
1500 S.W. First Avenue, Suite 1135
Portland, Oregon 97201
      Attorney for plaintiffs

Terrance Lee Hogan
Terrance Lee Hogan LLC
311 B Avenue, Suite E
Lake Oswego, Oregon  97034
      Attorney for defendants

AIKEN, Judge:


1 - OPINION AND ORDER

Plaintiffs Terry Vance and Tamla Rencher have filed suit against defendants John Childs and NW Freedom Corporation alleging breach of contract and breach of fiduciary duty. Plaintiffs' breach of contract claim consists of three counts: 1) defendants failed to perform his or their obligations under the Financing Agreement, as orally amended by the parties; 2) defendants breached the contract between the parties depriving plaintiffs of their rights with respect to the second store; and 3) plaintiffs are entitled to an accounting of the business and repayment of their share of the partnership proceeds. In their second claim, plaintiffs allege that defendants have breached their fiduciary duty to plaintiffs as partners. The defendants move for summary judgment. The court heard oral argument on October 31, 2005. The defendants' motion is denied.

## FACTS

In late 1997, defendant John Childs met with corporate officers and employees at Aaron Rents, Inc. ("Aaron's") and discussed the possibility of purchasing an Aaron's Rental Purchase Franchise in Medford, Oregon. Childs expressed interest in opening Aaron's stores in Portland, Oregon, but Aaron's was not willing to grant Childs the Portland market unless he found an additional investor.

In early 1998, Childs met plaintiff Terry Vance at their church in Crescent City, California. Childs and Vance discussed

2 - OPINION AND ORDER

the Aaron's franchise, and Vance informed Childs that he knew an investor who could help Childs obtain a four-store Area Development Agreement from Aaron's Rental Purchase. Shortly after their meeting, Vance introduced Childs to plaintiff Tamla Rencher. At that time, Rencher was a dentist in Idaho Falls, Idaho. Throughout February and March, Childs and Rencher discussed the prospect of Rencher investing in the franchise.

On March 6, 1998, Aaron's granted Childs an Aaron's Rental Purchase franchise in Medford, and agreed that Childs would be granted the Portland market if he could obtain additional financing. On March 12, 1998, Childs formed NW Freedom Corp. to operate Aaron's franchises. Childs designated himself president of NW Freedom Corp. and designated his wife, Chauncy Childs, as secretary. On March 21, 1998, Childs signed a Franchise Agreement with Aaron's, which granted him the Medford franchise. Childs had not yet entered into any formal agreement with Rencher or Vance at that time.

During March 1998, Childs and Rencher worked with Aaron's to obtain a four-store Area Development Agreement, which would allow NW Freedom Corp. to open four Aaron's stores in Portland. On March 12, 1998, Childs faxed both Rencher and Vance's preliminary profiles to Aaron's Regional Director of Franchise Development, Bill Wilson. Aaron's uses the preliminary profiles to obtain the educational and employment history of potential investors and

3 - OPINION AND ORDER

discover what liquid assets and equity sources the investors have available.  Wilson collected the preliminary profiles and sent them to Aaron's Director of Franchise Development, Todd Evans.  Evans reviewed Rencher's preliminary profile and felt that she might have sufficient equity to support additional franchise stores. Defendants allege that based on Rencher's preliminary profile, Aaron's sent Rencher a copy of the Uniform Franchise Circular and requested a confidential personal information form (known as the "long profile") for Rencher's finances.  On April 6, 1998, Childs sent Rencher's long profile to Aaron's, and Evans reviewed her information.

On April 7, 1998, one day after Childs sent Rencher's long profile to Aaron's, Aaron's sent Childs and Rencher a four-store Area Development Agreement.  The new documentation sent by Aaron's also transferred the Franchise Agreement for the Medford store to Portland.  Childs and Rencher signed that documentation, and the Area Development Agreement became effective on April 13, 1998.

On April 15, 1998, Childs, Rencher and Vance entered into a written "Financing Agreement" (referred to by defendants as "Agreement I"), which had been drafted by Childs.  The agreement provided that Childs and Rencher would be the personal guarantors of NW Freedom Corp.  The agreement further specified that Rencher would provide collateral acceptable to the bank in the amount of $250,000 per store, that the bank would place a lien on her

property in the amount she guaranteed, and that NW Freedom Corp. would pay her a monthly "collateral usage fee equal to 7.5% of the total of all property liens outstanding on her property during that month." (Doc. 101, Rencher exhibit 13, Financing Agreement).

Aaron's had difficulty substantiating Rencher's assets. Evans, an Aaron's employee, stated that Rencher did not have a significant amount of liquid capital. According to defendants, Aaron's rejected Rencher's long profile based on lack of substantiation. Plaintiffs, however, deny this allegation. This court notes that the record is unclear as to whether Aaron's rejected Rencher's long profile.

Additionally, defendants allege that Aaron's repeatedly requested revisions of Rencher's long profile because the company was unable to substantiate Rencher's assets. Revisions of Rencher's long profile were sent to Aaron's on April 30, 1998, May 27, 1998, June 3, 1998, August 19, 1998, October 23, 1998, and December 15, 1998.[1] Childs is primarily responsible for having pulled together Rencher's financial information, with some help from Vance. In addition, Childs paid all of the costs incurred in having Rencher's property appraised. Plaintiffs admit that Rencher's financial files were in poor condition and that Aaron's struggled to substantiate Rencher's long profile. Plaintiffs,

---

[1] Childs admits that he signed Rencher's name to the December 15, 1998 long profile without Rencher's permission.

however, deny defendants' claim that Rencher "directed volatile communications, disbelief, and temper tantrums toward Childs." Defendants' Concise Statement of Facts at 8, No. 9.

According to defendants, Evans voided the four-store Area Development Agreement between April 14, 1998, and December 7, 1998, without notifying either Childs or Rencher. Aaron's replaced the original Area Development Agreement with an Agreement for two stores. Defendants imply that Aaron's made this decision because Rencher had insufficient assets to support additional stores. Aaron's failed to document the reason for this change. When Evans was deposed on February 3, 2005, he noticed that void had been written across the original Area Development Agreement. However, Evans did not recall when he had written void on the document. Moreover, Evans stated that he did not think that he would have written void across the Agreement without discussing it with Childs. (Doc. 113, exhibit 7, Evans Deposition at 127).

On September 3, 1998, Aaron's employee, Susan Blackwell, wrote a letter to Childs and Rencher regarding the reduction of the Area Development Agreement from four stores to two stores. Defendants allege that this letter confirmed Aaron's reduction of the Area Development Agreement, but plaintiffs argue that the letter was only an offer by Blackwell to reduce the number of stores. The court is unable to make any finding regarding the letter because the parties failed to cite to the actual letter.

Defendants allege that, as of November 23, 1998, Aaron's rejected Rencher for a guarantor of more than one store. Plaintiffs deny this allegation. Defendants base their allegation on Evans's testimony. The court finds that Evans's testimony regarding this issue is speculative and inconclusive. (Doc. 113, exhibit 7, Evans Deposition at 104).

According to defendants, Wilson told Childs in December that Rencher's long profile lacked sufficient liquid assets to support more than one store. This court notes, however, that defendants single source of support for this allegation is Childs's testimony. Defendants' failed to provide any documentation in support of their allegation.

Defendants also allege that Childs told Rencher that Aaron's would not authorize more than one franchise, and in response, Childs and Rencher agreed that Rencher should try to refinance her real property and reapply to Aaron's after increasing her liquid assets. Plaintiffs, however, deny defendants' allegation, and allege that Childs failed to keep Rencher informed of Aaron's decisions.

In March 1999, Childs opened the first Aaron's store in Portland, known as the Sandy Store. To open the Sandy Store, Childs spent $261,052.50. When the Sandy Store first opened, Childs was the General Manager and Vance was the sales manager; however, Vance later became the General Manager of the Sandy Store.

In June 1999, Vance approached his father-in-law, Alan Cannon, to ask if he would be interested in replacing Rencher as a financial guarantor. Cannon declined his offer.

Defendants allege that, during the summer 1999, Vance told Childs that Rencher was still having financial difficulties and was not interested in the business. Plaintiffs deny that allegation.

In October 1999, Childs applied for an increase in inventory financing from SunTrust Bank. In response, SunTrust Bank requested Rencher's consent, which she refused to give. Rencher wrote back to SunTrust Bank stating, "I am requesting that my name be taken off this NW Freedom Corp. Thank you!" Plaintiffs state that Rencher refused to sign the guarantee for the inventory line increase above $400,000 in an effort to get Childs to comply with the Financing Agreement. Under the Financing Agreement, Childs was required to send Rencher monthly financial statements for the corporation, which Childs failed to do. Despite Rencher's refusal to give her approval, SunTrust Bank subsequently approved the increase. Defendants allege that SunTrust bank removed and/or released Rencher from the underlying inventory guarantee for the Sandy Store. Plaintiffs, however, deny that Rencher was ever released. Further, SunTrust wrote to Rencher stating that the bank was "unable to send [Rencher] anything showing [her] name has been removed." (Doc. 101, Rencher Exhibit 18).

Defendants allege that following Rencher's refusal to approve

the increase in the loan guarantee, Childs felt that Rencher was financially stressed. According to defendants, Rencher did not qualify as a guarantor for multiple franchises, and Vance told Childs that Rencher's financial condition was quickly deteriorating. Plaintiffs deny both of these allegations. First, plaintiffs state that it was never determined that Rencher was unable to qualify as a guarantor for multiple franchises. Further, plaintiffs state that Vance never told Childs that Rencher's financial condition was deteriorating.

Defendants allege that Childs and Vance pursued other investors in early 2000 without success. Plaintiffs, however, deny that Vance had any knowledge that other investors were being sought with the exception of his father-in-law, Alan Cannon. In April 2000, Childs called his father, Walter Childs, and asked him for a second time to consider being a guarantor for multiple franchises. His father agreed, and Childs submitted his father's application to Aaron's on April 10, 2000.

Defendants and plaintiffs' explanations of what occurred after Childs's father agreed to guarantee additional stores differ significantly. According to plaintiffs, Childs went to the Portland airport on April 21, 2000 to intercept Vance, whom Childs had learned was going to speak with Rencher. Plaintiffs allege that Childs found Vance at the airport and told him that Childs's father was going to invest in Aaron's and "you and Tamla are out."

(Doc. 110, Memorandum in Opposition to Defendants' Motion for Summary Judgment at 12). Conversely, defendants allege that Vance became enraged when Childs told Vance that Childs's father was going to be the guarantor for Aaron's, and as a result, Vance immediately resigned his position with the store.

According to defendants, Childs hired a new general manager the same night Vance quit. Defendants allege that Vance came back into the store the next week, claiming that he had not quit, but had simply taken medical leave. Defendants, however, state that since Childs had already hired another general manager, he could not reinstate Vance. In contrast, plaintiffs allege that Childs had already lined up a replacement for Vance one week before the airport incident. Further, plaintiffs' allegation is supported by a declaration from one of Aaron's former employees, Velma Cleveland. (Declaration of Velma Cleveland).

On June 1, 2000, Walter Childs was approved as a guarantor for multiple Aaron's franchises. Aaron's sent defendant Childs and his parents a new four-store Area Development Agreement, along with a Franchise Agreement for a second store in Beaverton. Walter and John Childs signed the documents, which became effective June 19, 2000.

On or about April 15, 2001, Rencher became aware that her dental practice was being audited and she was being investigated for medicaid fraud. Plaintiffs point out that this did not occur

until one year after defendants' alleged breach of contract. Rencher later admitted to altering medical files and pled guilty to Obstruction of Criminal Investigation of Health Care Offenses. Rencher's conviction was entered on January 3, 2003, and she forfeited her dental license on April 18, 2003.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary

judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

DISCUSSION

A.   Breach of Contract Claim

    1.   Applicability of the Statute of Frauds (Count One)

In the first count of claim one, plaintiffs allege that defendants breached their contract by failing to perform their obligations under the Financing Agreement, as orally modified by the parties.  Further, plaintiffs allege that they either performed all conditions precedent to invoke their rights to the second store or were prevented from doing so by the defendants' breaches. Finally, plaintiffs argue that defendants' breaches deprived plaintiffs of their rights with respect to the second store. Defendants, however, deny all of the above allegations and counterclaim that plaintiffs breached the contract.  Moreover, defendants argue that summary judgment should be granted with respect to plaintiffs' breach of contract claim because 1) the Statute of Frauds prohibits the oral modification of the Financing Agreement, and 2) Rencher and Vance materially breached the Financing Agreement, and their breach excused Childs's performance of the Agreement.

On April 15, 1998, Childs, Rencher and Vance entered into a Financing Agreement drafted by Childs, which outlined the parties' relationship to each other and NW Freedom Corp. as they attempted to open four Aaron's Rental Purchase franchises. The Franchise Agreement provided that Childs would manage the four stores with Vance's assistance; Rencher would provide collateral in the amount of $250,000 per store; the bank would place a lien on Rencher's property matching the amount of collateral Rencher provided; NW Freedom Corp. would pay Rencher a monthly collateral usage fee equal to 7.5% of the total of all property liens outstanding on her property; and Rencher would fully finance the startup and operation of the second store, which would require $150,000 to $200,000 for start-up expenses.

The collateral usage fee listed in the Financing Agreement became a source of dispute between Rencher and Childs. According to Childs, liens would be placed on Rencher's property, so he created the collateral usage fee to compensate her for those liens. He later discovered, however, that no liens were going to be placed on Rencher's property. Instead, Rencher would guarantee the loans using her property as collateral.

To remedy this mistake, Childs alleges that he orally modified the Financing Agreement by agreeing to pay Rencher $750 per month for her financial guarantee. Plaintiffs deny this allegation and state that neither Rencher nor Vance had any knowledge of such an

agreement.  Plaintiffs admit that Childs paid Rencher a total of $10,500 in substitute payments, which ended April 2000.

Defendants admit that if the oral modification is binding, defendants would have owed Rencher more than the $10,500 that Rencher received.  Defendants argue, however, that the oral modification violated the statute of frauds and was, therefore, invalid.  According to the statute of frauds, an agreement must be in writing if the agreement cannot be completed within one year. ORS 41.580(a)(1997).  Defendants argue that the oral modification would have required Childs to make payments to Rencher for more than one year.  As a result, defendants claim that Childs does not owe Rencher additional money.  A dispute of material fact exists as to whether the oral modification was made under the terms defendants allege and whether the obligation imposed by the oral modification could have been completed within one year.  Moreover, defendants' assertion that they are entitled to summary judgment ignores that fact that if the oral modification of the Financing Agreement was not binding, the original contract would still be in effect.

If the original Financing Agreement is in effect, the parties dispute whether defendants owed Rencher 7.5% of the amount of the guarantee she provided for the loan, or whether defendants did not owe Rencher anything because the bank did not place any liens on her property.

According to plaintiffs, the only oral modification that was made was an agreement between Rencher and Childs that Childs would pay Rencher 7.5% of the amount of the loan guarantee, even though no liens would be placed on her property. Plaintiffs argue that this oral modification is binding because the agreement could have been completed within one year and, therefore, falls outside of the statute of frauds. The parties dispute whether this oral modification occurred as plaintiffs have alleged and whether the modification could have been completed within one year.

Many genuine issues of disputed material fact exist regardless of whether the statute of frauds applies. Accordingly, defendants first ground for summary judgment is denied.

### 2.  Allegation of Material Breach (Count Two)

In the second count of claim one, plaintiffs allege that defendants breached the contract depriving plaintiffs of their rights with respect to the second store. Defendants argue that they are entitled to summary judgment on this claim because: 1) Rencher materially breached the Financing Agreement by failing to provide sufficient financing; 2) the Financing Agreement is void because it purports to transfer or assign an interest in the Aaron's franchise which violates NW Freedom Corp.'s Franchise Agreement with Aaron's; 3) Rencher has a felony conviction, which is an article of default in the Franchise Agreement; 4) there was no mistake in the Financing Agreement; 5) Rencher materially

breached the Financing Agreement by refusing to authorize an increase in the bank loan; 6) Vance's rights to a second store never ripened because Rencher breached the Financing Agreement; and 7) Vance resigned his position as manager of an Aaron's store, and thereby forfeited his rights to the second store.

Defendants' primary argument appears to be that Rencher failed to provide sufficient financing for the four-store Aaron's franchise, and as a result, Rencher failed to fulfill a condition precedent to the Financing Agreement. Defendants argue that Rencher's material breach excused Childs's performance under the Financing Agreement. However, the parties dispute whether Rencher failed to fulfill her duties under the Financing Agreement. First, the parties dispute whether Aaron's rejected Rencher's long profile and, therefore, refused to grant NW Freedom Corp. a second store. Second, plaintiffs allege that Rencher could have provided sufficient capital if she had known that additional financing was needed. Defendants' sole support for their allegation is Childs's testimony. Therefore, genuine issues of disputed material fact exist as to whether Rencher failed to fulfill her duties under the Financing Agreement.

Defendants' second argument in support of summary judgment is unclear. Defendants appear to argue that they cannot be held liable for breaching the Financing Agreement because the Financing Agreement violated NW Freedom Corp.'s Franchise Agreement with

Aaron's and is, therefore, void. Defendants argue that the Financing Agreement is void because it purported to transfer or assign an interest in the Aaron's franchise. According to NW Freedom Corp.'s Franchise Agreement with Aaron's, the Franchise Agreement is void if the Aaron's franchise is transferred or assigned.

Defendants, however, have failed to establish that the Financing Agreement transferred or assigned an interest in the franchise. Presumably, defendants are basing their allegation on the language in the Financing Agreement stating, "Terry Vance, Jr. will . . . have the option to purchase this store's assets and operations from Tamla once it has been in operation for 24 months." (Doc. 101, Rencher exhibit 13, Financing Agreement at 1). Plaintiffs argue, however, that they were allowed under the Franchise Agreement to create virtual ownership of the stores between Childs, Vance and Rencher, although NW Freedom Corp. would continue to own the stores.

Plaintiffs' argument is supported by the testimony of Aaron's employee, Evans, who agreed that franchisees are authorized to create virtual ownership. Moreover, Evans stated that the Financing Agreement did not purport to transfer or assign an interest in the Aaron's franchise. (Doc. 113, exhibit 7, Evans Deposition at 113). In their Concise Statement of Facts, defendants state that "Evans testified that [the Financing

Agreement] was null and void." (Doc. 95, Defendants' Concise Statement of Facts at 5). This allegation, however, is a misrepresentation of Evans's testimony. After having testified that the Financing Agreement did not purport to transfer or assign an interest in an Aaron's franchise, Evans agreed that the Franchise Agreement would be null and void if it purported to assign or transfer an interest in an Aaron's franchise. (*Id.*; Doc. 113, exhibit 7, Evans Deposition at 113).

Further, plaintiffs argue that the Financing Agreement refutes any implication that there was to be an assignment or transfer of any formal franchise for any store. Plaintiffs point out that the Financing Agreement states, "All four stores will operate under NW Freedom Corp. franchise."

Even if the Financing Agreement did purport to transfer or assign an interest in the Aaron's franchise, it remains unclear whether the Financing Agreement would be null and void. The Financing Agreement was an agreement between Childs, Rencher and Vance. A transfer or assignment of the Aaron's franchise would have violated NW Freedom Corp.'s Franchise Agreement with Aaron's. It is not clear from the record whether that assignment or transfer would have voided the Financing Agreement.

Third, defendants argue that they are entitled to summary judgment because Rencher has a felony conviction and NW Freedom Corp.'s Franchise Agreement with Aaron's provides that a felony

conviction for moral turpitude and/or consumer fraud triggers default of the Franchise Agreement. Rencher's felony conviction, however, is irrelevant. First, Rencher was not convicted until 2003, nearly three years after the alleged breach in this case. Further, there is no indication that Aaron's was aware of Rencher's conviction, and Aaron's never stated that Rencher or NW Freedom Corp. were in default.

Fourth, defendants argue that the terms of the Financing Agreement are clear, and there was no mistake. However, the Financing Agreement states that the bank will lien Rencher's property and Childs will pay Rencher 7.5% of the value of the liens. Childs admitted that the language regarding liens was an error and that no liens were to be placed on Rencher's property. Childs's admission seems inconsistent with defendants' argument that there was no mistake. Further, even if this court found no mistake, a genuine issue of material fact exists regarding whether defendants fulfilled the terms of the Financing Agreement.

Finally, defendants argue that Rencher materially breached the Agreement when she refused to authorize SunTrust Bank to increase the loan guarantee to $550,000. The evidence, however, is insufficient to conclude that Rencher's decision not to authorize the increase was a material breach of the Financing Agreement.

Although defendants argue that Rencher was obligated under the Financing Agreement to authorize the loan increase, plaintiffs

argue that Rencher was not obligated to provide any financing in excess of $500,000.  The Financing Agreement signed by both parties states that "Rencher will provide collateral acceptable to the bank for inventory financing in the amount of $250,000 per store." (Doc. 101, Rencher exhibit 13, Financing Agreement at 1).  However, that amount conflicts with the information that Childs and Rencher received in the Uniform Franchise Offering Circular, which stated that between $178,000 and $392,900 per store would be needed to open a franchise.  A dispute of material fact exists regarding Rencher's obligation to authorize the loan increase.

Defendants also argue that Vance materially breached the Financing Agreement, and therefore, defendants are entitled to summary judgment with respect to Vance.  First, defendants argue that Vance's rights to a second franchise never ripened because Rencher failed to supply sufficient financing.  This allegation is not clearly supported by the record.  Moreover, the Financing Agreement states that Childs will pay Vance $2,083.33 per month while working at the first store.  Therefore, Childs had an obligation to Vance under the Financing Agreement even if the second store was not opened.  Second, defendants argue that Vance quit his employment and, therefore, breached the Financing Agreement.  A dispute exists, however, as to whether Vance quit his employment or was fired.

Because the parties dispute genuine issues of material fact,

summary judgment is denied on all grounds with respect to the second count of the first claim.

3. <u>Partnership Proceeds (Count Three)</u>

In count three of claim one, plaintiffs allege that a partnership existed between Rencher, Vance, and Childs and that plaintiffs are entitled to their share of the partnership proceeds. Defendants argue that they are entitled to summary judgment on this claim because Childs was not partnered with either Rencher or Vance.

Both plaintiffs and defendants' memorandums discuss the relevant standard to determine whether a partnership exists. <u>See</u> ORS 68.120. This statute, however, is part of the Uniform Partnership Law, which was repealed effective January 1, 1998. Since the parties here did not begin negotiations until 1998, the parties' relationship is governed by ORS 67.055 (1997). This statute provides five factors indicating whether persons have created a partnership:

> (A) Their receipt of or right to receive a share of profits of the business;
> (B) Their expression of an intent to be partners in the business;
> (C) Their participation or right to participate in control of the business;
> (D) Their sharing or agreeing to share losses of the business or liability for claims by third parties against the business; and
> (E) Their contributing or agreeing to contribute money or property to the business.

ORS 67.055.

Although the Financing Agreement does not explicitly form a partnership between the parties, it may establish an implicit partnership. The Financing Agreement provides that "Rencher will fully finance the startup and operation of the second store . . . . All positive cash flow of the second store not needed for operations will be paid to Tamla [Rencher] as return of capital." (Doc. 101, Rencher exhibit 13, Financing Agreement at 1-2). The Financing Agreement also provides that Vance will help Childs run the four Aaron's stores, act as general manager of the second store, and have the option to purchase the second store's assets and operations from Rencher. Both parties have provided conflicting testimony as to whether the parties expressed an intent to enter into a partnership. Considering this evidence, I find that disputed issues of material fact exist regarding the existence of a partnership between Childs and plaintiffs. Therefore, defendants' motion for summary judgment on plaintiffs' claim that they are entitled to a share of the partnership proceeds is denied.

B.   Breach of Fiduciary Duty Claim

        Plaintiffs also allege that defendants owed plaintiffs a fiduciary duty and that defendants breached that duty. Defendants argue that Childs did not have any fiduciary duty to Rencher or Vance because there was no partnership between them. As discussed *supra* section A 3, however, a dispute of material facts exists as to whether a partnership existed between the parties. Therefore,

22 - OPINION AND ORDER

defendants' motion for summary judgment on plaintiffs' breach of fiduciary duty claim is denied.

CONCLUSION

For the reasons given above, defendants' Motion for Summary Judgment (doc. 95) is DENIED.

IT IS SO ORDERED.

Dated this __8__ day of November 2005.


_____/S/ Ann Aiken_____
Ann Aiken
United States District Judge